**SO ORDERED: February 17, 2005.**



_____
**Anthony J. Metz III
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| Frankfort Tower Industries, Inc., et al. | ) | Case No.: 03-17287 |
| (f/k/a ROHN Industries, Inc., *et al*)[1] | ) | (Substantively Consolidated) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| Frankfort Tower Industries, Inc., et al., | ) | Adv. Pro. No.: 04-0358 |
| As Debtors-In-Possession, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -v- | ) | |
| | ) | |
| Winski Brothers, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

---

[1] The Debtors (and the Plaintiffs) are the following entities: Frankfort Tower Industries, Inc., Frankfort Tower Installation Services, Inc., Frankfort Tower Enclosures, Inc., Frankfort Tower, Inc., Frankfort Tower Products, Inc., Frankfort Tower Construction, Inc., formerly known as Rohn Industries, Inc., Rohn Installation Services, Inc., Rohn Enclosures, Inc., Rohn, Inc., Rohn Products, Inc., Rohn Construction, Inc.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ENTRY OF JUDGMENT

This matter comes before the Court on the *Complaint to Avoid and Recover Preferential Transfers* filed by the Plaintiffs, Frankfort Tower Industries, Inc., et al., Debtors and Debtors-in-Possession herein (the "Debtors" or "Plaintiffs") on June 14, 2004, the *Amended Complaint to Avoid and Recover Preferential Transfers* (the "Amended Complaint") deemed filed by the Debtors on August 5, 2004 , the Answer filed by Winski Brothers, Inc. on July 7, 2004 ("Winski Brothers"), and the *Affirmative Defenses* filed by Winski Brothers on July 7, 2004 [2].

The Court having conducted a trial on the merits on February 4, 2005, wherein the Plaintiffs were represented by counsel, Ben Caughey; the Defendant was represented by counsel, David Rosenthal.  Having heard the evidence, the testimony of the witnesses and the arguments of counsel, the Court now makes its findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### Findings of Fact

1.  The Court adopts as findings of fact the "Statement of Undisputed Facts" set forth in *Plaintiffs' Pre-Trial Statement* as filed with the Court on September 24, 2004 and as agreed to by the Winski Brothers pursuant to the Winski Brothers' Pre-Trial Statement , as filed with the Court on September 28, 2004.  Specifically, the following undisputed facts are hereby adopted:

    a) "The above-captioned Debtors filed their voluntary Petitions for Relief under Chapter 11 of the Bankruptcy Code on September 16, 2003 (the "Petition Date"), and continue to operated their businesses as Debtors-in-Possession."

---

[2] The Debtors' *Amended Complaint* was filed solely to include an exhibit mistakenly omitted from their original Complaint.  Because the Amended Complaint did not differ in any material respects from the original Complaint, no Amended Answer was filed.

    b)    "The Defendant did business with the Debtors prior to the Petition Date."

    c)    "The Debtors made one or more transfers by check, wire transfer, or its equivalent, of an interest in property of the Debtors in an aggregate amount not less than $9,180.00 (the "Transfers") directly to or for the benefit of the Defendant on or within 90 days before the Petition Date (the "Preference Period")."

    d)    "At the time of each of the Transfers, the Defendant was a creditor of the Debtors within the meaning of 11 U.S.C. § 101(10)(A)." and

    e)    "The Transfers either reduced or fully satisfied a debt then owed by the Debtors to the Defendant, and therefore, were to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1)."

2.    At trial, the parties also stipulated that the Transfers were:

    A.    To or for the benefit of the Defendant, a creditor;

    B.    For or on account of an antecedent debt owed by the Plaintiffs before such Transfers were made;

    C.    Made while the Plaintiffs were insolvent;

    D.    Made on or within 90 days before the date of the filing of the Plaintiffs' bankruptcy petition; and

    E.    Enabled the Defendant to receive more than the Defendant would receive if (a) the case were a chapter 7; (b) the Transfer had not been made and (c) the Defendant received payment of such debt to the extent provided by the Bankruptcy Code.

3.    The Defendant is a trash company located in Frankfort, Indiana. The Plaintiffs manufactured and installed infrastructure components for the telecommunications industry and maintained a facility in Frankfort, Indiana.

4.  The Defendant is in the business of picking up and hauling trash for its customers, which included the Plaintiffs, and their predecessor, Rohn Industries. The Defendant would bill and issue to the Plaintiffs an invoice / statement on the last day of the month for all trash pickup services for that month. For example, an invoice dated April 30, 2003 would contain the charges for all trash pickup between April 1 and April 30, 2003. The Defendant's payment terms were "Net 15 days from date of statement", meaning payment was due within fifteen (15) days of the date of the invoice/ statement.

5.  While the Defendant was providing trash pickup services to the Plaintiffs, the Plaintiffs were selling certain scrap metal and steel components to the Defendant. Neither the trash pickup nor the scrap metal agreements between the parties was reduced to writing. Lisa Cavanaugh, an employee of the Plaintiffs, supervised the Plaintiffs' accounts payable and testified that, at any given time, the Plaintiffs and the Defendant "would owe each other". Ms. Cavanaugh viewed the trash pickup and scrap metal arrangements as separate functions and it appears that the parties did, too. The invoices sent to the Plaintiffs by the Defendant for trash pickup never included any "credits" or setoffs for scrap metal the Defendant purchased from the Plaintiffs.

6.  The Defendant has stipulated that the Transfers constitute avoidable preferences, but raises the defense that the Transfers were made in the ordinary course of business and that they were contemporaneous exchanges for new value. The Plaintiffs filed their chapter 11 cases on September 16, 2003. The 90 -day reach back period would have commenced on or about June 16, 2003 (the "preference period").

7.  A long and established business relationship existed between the parties. Joel Stiller, an officer of the Defendant, testified at trial that the Defendant has been in business in Frankfort

-4-

since 1937 and has been doing business with the Plaintiffs or a predecessor of the Plaintiffs since the 1940's. Stiller himself has been an employee of the Defendant for 18 years. During that entire time, up to about August, 2002, the Plaintiffs paid the Defendant for trash pickup within the "net 15" terms, and, at the latest, no more than ten (10) days after that date, or 25 days after the invoice date. The Defendant would not charge interest if the Plaintiffs paid outside the 15 day terms. The Defendant never changed its payment terms and this pattern was consistent throughout the parties long business history.

8. Lisa Cavanaugh testified that, between January 1, 2002 and June 15, 2003, there were ten (10) payments made by the Plaintiffs to the Defendant for trash pickup services. Of those ten payments, five (5) of the payments were made within the "net 15 days" terms and two (2) of the payments were made within ten days from the "net 15 days" terms.

9. Thus, it appears from both Ms. Cavanaugh's testimony and stipulated Plaintiffs' Exhibit 7, that between January, 2002 and August, 2002, the Plaintiffs paid for trash pickup either within 15 days from the statement date, or, within ten days thereafter. This patten was consistent with the Plaintiffs' payment history prior to that period.

10. The Plaintiffs began to fall behind on payments in August, 2002. Rather than payment of the invoice the next month, the August and September, 2002 invoices were not paid until January, 2003; the October and November, 2002 invoices were not paid until February, 2003; and the December, 2002 through March, 2003 invoices were not paid until May, 2003. Nevertheless, the Defendant continued to buy scrap metal from the Plaintiffs and did not alter the basic business terms or take any extraordinary steps to address the extended length of time between payments.

11. Finally, the Plaintiffs continued to fall far enough behind on payments by August,

2003 such that Joel Stiller, an employee of the Defendant, telephoned and informed the Plaintiffs that if the past due trash pickup charges were not paid, the Defendant would not purchase and pick up scrap metal from the Plaintiffs. Stiller testified that this was the first time in his 18-year employment history with the Defendant that he had to make such a call to prompt payment from the Plaintiffs.

12.     Knowing that it was sliding into financial difficulty and having to choose which vendors to pay, the Plaintiffs opted to pay "local" vendors first. To that end, between August 6, 2003 and August 26, 2003, the Plaintiffs cut and sent to the Defendant and the Defendant cashed four (4) separate checks in payment of trash pickup services owed to the Defendant. These checks in the aggregate amounted to $9180.00 were admitted into evidence by stipulation as Plaintiffs' Exhibit 1:

- a) Check #323250 in the amount of $2,150.00 and dated August 6, 2003 was applied by Winski Brothers on August 7, 2003 and satisfied amounts due to Winski Brothers related to a April 30, 2003 Statement from Winski Brothers to the Debtors, which Statement set forth terms of payment of "Net 15 Days from Date of Statement", thus rendering the transfer made via check #323250 eighty-four (84) days late;

- b) Check #323336 in the amount of $2,540.00 and dated August 11, 2003 was applied by Winski Brothers on August 20, 2003 and satisfied amounts due to Winski Brothers related to a April 30, 2003 Statement from Winski Brothers to the Debtors and a May 31, 2003 Statement from Winski Brothers to the Debtors, which Statements set forth terms of payment of "Net 15 Days from Date of Statement", thus rendering the transfer made via check #323336 ninety-five (95) days late and eighty-six (86) days late respectively;

- c) Check #323422 in the amount of $2,890.00 and dated August 20, 2003 and was applied by Winski Brothers on August 23, 2003 and satisfied amounts due to Winski Brothers related to a June 30, 2003 Statement from Winski Brothers to the Debtors, which Statement set forth terms of payment of "Net 15 Days from Date of Statement", thus rendering the transfer made via check #323422 thirty-nine (39) days late; and

    d)    Check #323526 in the amount of $1,600.00 and dated August 26, 2003 and was applied by Winski Brothers on August 28, 2003 and satisfied amounts due to Winski Brothers related to a July 31, 2003 Statement from Winski Brothers to the Debtors, which Statement set forth terms of payment of "Net 15 Days from Date of Statement", thus rendering the transfer made via check #323526 thirteen (13) days late

13.    Stiller testified that the prior to August, 2003, the Defendant had never received four checks from the Plaintiffs for payment of trash pickup within the same month.

14.    The Plaintiffs filed their chapter 11 cases on September 16, 2003.

### Conclusions of Law

A.    The Defendant has stipulated that the Transfers are avoidable preferences under §547(b) of the Bankruptcy Code. The only issues remaining are whether the Defendant can reduce or eliminate its liability either through the "payment made in the ordinary course of business" defense under §547(c)(2), or the "contemporaneous exchange for new value" defense under §547(c)(1).

B.    With respect to the ordinary course of business defense under §547(c)(2), the Defendant must prove, by a preponderance of the evidence, that:

(1)    The Transfers were in payment of a debt incurred by the Debtors in the ordinary course of business or financial affairs of the Debtors and the Defendant;

(2)    The Transfers were made in the ordinary course of business or financial affairs of the Debtors and the Defendant; and

(3)    The Transfers were made according to ordinary business terms.

*Midway Airlines, Inc.* 69 F.3d 792, 797 (7th Cir. 1995); *In re Tolona Pizza Products Corp.*, 3 F.3d

1029, 1031-1033 (7th Cir. 1993) (noting that the second and third elements are distinct and therefore must be established separately).

      C.      The Defendant does not dispute that the Transfers were in payment of a debt incurred by the Debtors in the ordinary course of its business, under the first prong of §547(b)(2).

      D.      With respect to the second prong, the *Tolona Pizza* case recognized that late payments could still be within the ordinary course of business as established between the parties if the payments made during the preference period. (90 day period before petition filed) were consistent with those made during the "pre preference period". Here, the long and established course of dealing between the parties show that for the vast majority of the pre preference period, the established pattern was for the Plaintiffs to pay the entire amount of the invoice within payment terms, such that each month's charges would be paid in full by the next month. And, if the invoices were not paid within payment terms, then they were paid, generally, no later than ten days after payment terms, and this pattern existed during the entire course of the long business relationship, up until August, 2002. Then, beginning in August, 2002, payment by the Plaintiffs increasingly deviated farther from these established payment terms, where payment for the August and September, 2002 invoices was received in January, 2003, as much as nearly four months after the invoice was issued. Despite this marked increase in the time it took to pay invoices, the Defendant did not take any extraordinary steps until August, 2003. By August, 2003, a month before the bankruptcy filing and well within the preference period, Stiller called the Plaintiffs and informed them that the Defendant would no longer purchase scrap metal if the past due trash pickup invoices were not paid. Stiller testified that this call was the first of its kind he had to make to the Plaintiffs in his 18-year history of doing business with the Plaintiffs. The result was that the Defendant received four checks in August, 2003,

-8-

for full payment of the April, May, June and July, 2003 invoices.

The Court finds that the long established practice between the parties was that the Plaintiffs paid either according to terms or within ten days thereafter, and that invoices were paid in full within the month following the month they were issued. The last ten months of the pre-preference period were not indicative of this practice, but given the long business history between these parties that preceded those ten months and the regularity with which the Plaintiffs paid the Defendant, the Court finds that payment within "net 15 days" or within ten days thereafter was the course of business established by the parties. Given this fact, the Court concludes that, the first three checks issued on August 6, 11th and 20th were anywhere from 39 to 95 days past the "net 15 days" and were *significantly* out of the range of payment terms established between the parties. Consequently, the Court concludes that the Transfers represented by those checks were not made within the ordinary course of business under the second prong of §547(c)(2). Because the Defendant has the burden of proving all three parts of §547(c)(2) and has failed on the second, there is no need to discuss the third "industry standards" requirement under §547(c)(2)(C) with respect to these Transfers.

E.     However, the fourth check issued on August 26, 2003 in the amount of $1600 was for payment of an invoice issued on July 31, 2003, less than a month before and was *applied* to the outstanding invoice only thirteen (13) days beyond the "net 15 days" terms, but actually was *issued* eleven (11) days beyond those terms. This payment did not significantly deviate from the established terms and in fact was consistent with the pattern established by the parties in the pre preference period – namely, paying an invoice in the month after it was issued. Thus, the Court concludes that the Defendant carried its burden under §547(c)(2)(B) in showing that the Transfer made by the last check dated July 31, 2003 was made within the ordinary course of business of the

parties.³

F. The Court further concludes that the Defendant likewise carried its burden under §547(c)(2)(C) with respect to the fourth check. Stiller testified that the other two or three firms in the Frankfort area that also were in the business of trash pickup would continue to do business with a customer despite late payment, and would not charge interest for late payments. Although there was no evidence as to *how* late these other vendors in the "industry" accepted payment, the Court concludes that the 13 days beyond the "net 15 days" term was within a range that encompassed the practice of these other firms in the "industry" and such payment was not so "idiosyncratic" or "extraordinary" as to fall outside the broad range of acceptable payment terms within the "industry". Thus, the last Transfer made on July 31, 2003 is not recoverable by the Plaintiffs under §547(c)(2).

G. Having determined that the Defendant did not meet its burden with respect to the first three checks under the "ordinary course of business" defense under §547(c)(2), are those Transfers saved from avoidance by the "contemporaneous exchange for new value" defense under §547(c)(1)? In this regard, the Defendant must prove, by a preponderance of the evidence, that:

(1) the Transfers were intended by the Debtors and the Defendant to or for whose benefit such Transfers were made to be a contemporaneous exchange for new value given to the Debtors; and

(2) the Transfers were in fact a substantially contemporaneous exchange.

H. This defense was meant to protect those transfers that do not diminish the bankruptcy estate, such as those transfers where the debtor receives new value on account of and equal to the

---

³ Indeed, if this were the only check at issue, the Court doubts that the Plaintiffs would have filed a complaint to recover the $1600.00 transfer under the theory of a preference payment.

amount of the transfer. The theory behind this defense is that, to the extent new value is offered contemporaneously with the receipt of a transfer, the preference is repaid to the estate and the transfer is unavoidable. *In re Prescott*, 805 F.2d 719, 727 (7th Cir. 1986); *In re Golfview Developmental Center, Inc.*, 309 B.R. 758, 773-74 (Bankr. N. D. Ill. 2004). "New value" is defined in §547(a)(2) as "money or money's worth in goods, services, or *new* credit...but does not include an obligation substituted for an existing obligation".

The consideration for the Transfers here was the Defendant providing trash pickup service. The Defendant argues that it provided new value by continuing to provide such services on credit when it could have ceased providing such services due to the Plaintiffs' tardy payments. However, there is no evidence in the record that the Defendant extended anything "new" to the Plaintiffs; indeed, for the last ten months during the pre-preference period, the Defendant had accepted late payment without interruption of trash pickup service and therefore, there is nothing in the record to suggest that the Defendant was giving up anything of value when it chose to continue to do business with late paying Plaintiffs. Even if the Defendant had shown that it routinely cut off customers who did not timely pay, but chose to forego such action here, forbearance from exercising a right does not constitute "new value". *First Interstate Credit Alliance, Inc. v. American Bank of Martin County*, 488 U.S. 993 (1988).

Nor do the payments to the Plaintiffs for scrap metal qualify as "new value" under this defense. There was ample evidence in the record to suggest that the parties did not intend for the trash pickup agreement and the scrap metal agreement to be integrated agreements. At no time were the amounts owed to the Plaintiffs for scrap metal credited against the amounts the Plaintiffs owed the Defendant for trash pickup. The evidence in the record is clear that they were two separate

-11-

agreements and were booked and maintained as such. There is nothing in the record to show that the *transfers* (the four checks at issue here) were contemporaneously given as new value for some other transfer that was otherwise preferential. Nor is there any evidence that the payments made to the Plaintiffs for scrap metal were intended by the parties to be a contemporaneous exchange for value to offset the Transfers. Accordingly, the Defendant has not proven the elements of §547(c)(1).

I. By virtue of the foregoing, the first three Transfers of August 6, 11th and 20th in the aggregate of $7580.00, are transfers that are avoidable by the Plaintiffs under 11 U.S.C. § 547, and recoverable by the Plaintiffs under 11 U.S.C. §550.

J. The award of pre-judgment interest, as requested in the Debtors' Amended Complaint, is proper and, pursuant to 28 U.S.C. § 1961, the Debtors are entitled to an award of pre judgment interest of $148.15 from June 14, 2004 to February 15, 2005, with interest accruing at the rate of $.60 (sixty cents) per diem thereafter until paid in full.

### Judgment

WHEREFORE, it is ORDERED, ADJUDGED, and DECREED that Judgment is hereby entered, without relief from valuation and appraisement laws, in favor of the Plaintiffs, Frankfort Tower Industries, Inc., et al., and against the Defendant, Winski Brothers, Inc., in the amount of $7580.00, plus costs in the amount of $150.00, and prejudgment interest from June 14, 2004 to February 15, 2005 of $148.15, with interest accruing at the rate of $.60 (sixty cents) per diem thereafter until the judgment is paid in full.

###

Distribution:

Mr. Ben T. Caughey
ICE MILLER
One American Square
Box 82001
Indianapolis, Indiana 46282-0002
Attorney for the Plaintiffs

Mr. David A. Rosenthal
P.O. Box 349
Lafayette, IN 47902
Attorney for the Defendant

United States Trustee
101 West Ohio Street, Suite 1000
Indianapolis, Indiana 46204